Filed 7/6/15  P. v. Juan CA2/6

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALVIN STANLEY JUAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B256573<br>(Super. Ct. No. BA412602-01)<br>(Los Angeles County) |

Alvin Stanley Juan appeals a judgment following conviction of two counts of assault with a firearm, with a finding that he personally used a firearm during commission of the crimes.  (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subd. (a).)[1]  We affirm.

#### FACTUAL AND PROCEDURAL HISTORY

Juan and Hisilda Araque were neighbors in an apartment complex on Holmes Avenue in Los Angeles.  In the afternoon of May 23, 2013, Araque's boyfriend, Gabriel Sanchez, visited her apartment.  As Sanchez and Araque placed their children in Sanchez's vehicle, Juan and his girlfriend, Yesenia Castro, approached.  Juan asked Sanchez, "What's up?" in an angry voice.  Sanchez replied in the same manner, asking "What's up?"

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

The two men began to argue, "face-to-face" approximately six inches apart. Sanchez stated, "Let's get down," "You're a little bitch," and "Let's fight." During the exchange, Sanchez said, "Man, I know you're gonna go get your gun. Go get your gun."

Juan then went to his apartment and returned shortly with a black handgun that was concealed in a sock. Juan removed the sock and pointed the handgun at Sanchez, who asked, "So are you going to shoot it or just going to take it out?" Juan pointed the handgun at Sanchez twice before Araque's mother and Castro separated the two men and pulled Juan's arm away. Araque's mother then stated that she was calling for police assistance. Juan responded that he would "get [Sanchez] back." Sanchez testified that he was not frightened during the incident: "If I was gonna die, I was gonna die. What can I say?"

Juan returned to his family's apartment prior to the arrival of police officers. Juan's mother, Paula Cano Francisco, let him inside the apartment after he tried to force open the locked apartment door. She asked Juan to explain the argument outside. In response, Juan pointed the handgun at her as she stood approximately six to ten feet away. Francisco stated, "Are you going to shoot me? Do it." Juan turned away and left the apartment through his bedroom window, taking the handgun with him.

Investigating police officers did not recover a handgun from Juan's apartment. Juan's mother and father testified at trial that they did not know whether the handgun was a toy. During a proceeding outside the jury's presence, Juan's counsel stated that there was "no argument" regarding the nature of the gun: "There's no argument that it was a toy gun. No one is saying this was a fake gun."

The jury convicted Juan of two counts of assault with a firearm and found that he personally used a firearm during commission of the crimes. (§§ 245, subd. (a)(2), 12022.5, subd. (a).) The trial court sentenced him to a prison term of seven years for each count, consisting of a three-year midterm plus four years for the firearm use enhancement. The court ordered that the sentence for the second count be served concurrently to the sentence for the first count. The court also imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), an $80 court security assessment,

2

and a $60 criminal conviction assessment, and awarded Juan 170 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Juan appeals and contends that: 1) the trial court erred by not instructing sua sponte that the firearm must have been loaded and operable; 2) the trial court erred by not modifying CALCRIM No. 875 to state that each victim must have been subject to the application of force; and 3) insufficient evidence supports the judgment.

## DISCUSSION

### I.

Juan argues that the trial court erred by not instructing sua sponte that section 245, subdivision (a)(2) requires that the firearm be loaded and operable. He points out that CALCRIM No. 875 ("Assault with Deadly Weapon (Pen. Code, Section 245(a)(2))") is silent regarding the requirement of a loaded and operable firearm. Juan asserts that the failure to instruct regarding the operable characteristics of the firearm removed an element of the offense from the trier of fact and is not harmless beyond a reasonable doubt.

The trial court properly instructed with CALCRIM No. 875 regarding the offense of assault with a firearm. The instruction accurately tracks the language of sections 240 and 245, subdivision (a)(2). The instruction also properly informed the jury that before finding Juan guilty of assault with a firearm, it must find that at the time Juan acted, "he had the present ability to apply force with a firearm to a person."

In *People v. Miceli* (2002) 104 Cal.App.4th 256, the court considered the similar criminal offense of assault with a semiautomatic firearm, section 245, subdivision (b). *Miceli* concluded that section 245, subdivision (b) does not require proof that the firearm was operable as a semiautomatic at the time of the assault. (*Miceli*, at p. 268.) "A person may commit an assault under the statute by using the gun as a club or bludgeon, regardless of whether he could also have fired it in a semiautomatic manner at that moment." (*Id.* at p. 270.) *Miceli* also noted that section 245, subdivision (b) does not proscribe assault with a *loaded* semiautomatic firearm. (*Miceli*, at p. 270.) In

3

contrast, numerous provisions in the Penal Code plainly require that a firearm be loaded as an element of the offense. (*Ibid.* [citing examples].)

To the extent that Juan argues that the trial court should have further defined "present ability" set forth in CALCRIM No. 875 to require an operable or loaded firearm, he has forfeited the argument by his failure to request clarification or modification. (*People v. Whalen* (2013) 56 Cal.4th 1, 81-82.) The court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel. (*Ibid.*)

In any event, as discussed in *III.*, *post*, substantial and overwhelming evidence supports the reasonable inference that the firearm was loaded and operable. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 13 ["A defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a loaded weapon"].)

*II.*

Juan argues that the trial court erred by not modifying CALCRIM No. 875, *supra*, to instruct that each victim must have been subject to the application of force. He asserts that the unmodified instruction relieved the prosecution of proving every element of the two offenses beyond a reasonable doubt. Juan relies upon *People v. Velasquez* (2012) 211 Cal.App.4th 1170, 1175-1177, concluding that CALCRIM No. 875 violates a defendant's right to due process of law where there are multiple victims and multiple counts but the trial court fails to modify the instruction to reflect "person" and "someone" as plural nouns.

CALCRIM No. 875, as instructed, provides: "The defendant, Alvin Juan, is charged in Counts One and Two with assault with a firearm in violation of Penal Code section 245. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably

4

result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force with a firearm to a person."

There is no reasonable likelihood that the jury understood CALCRIM No. 875 in the manner asserted by Juan. (*People v. Bryant* (2014) 60 Cal.4th 335, 433 [standard of review where jury instruction challenged as subject to erroneous interpretation].) Here there were two separate assaults committed against separate victims at different times and places. The trial court instructed with CALCRIM No. 3515, requiring each count to be considered separately, and the jury received separate verdict forms for each count that named each victim. We assume that jurors exercise common sense in interpreting instructions and deliberating. (*People v. Lavender* (2014) 60 Cal.4th 679, 681.) "'We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions.'" (*People v. Sanchez* (2013) 221 Cal.App.4th 1012, 1024.)

*People v. Velasquez*, *supra*, 211 Cal.App.4th 1170, does not assist Juan. There, the defendant was convicted of five counts of assault with a firearm committed against five family members. (*Id.* at pp. 1174-1175.) The evidence established that defendant fired multiple gunshots at the garage of the home of the victims, but only one family member was present in the garage at the time of the shooting. (*Id.* at p. 1175.) *Velasquez* concluded that the use of the singular nouns "person" and "someone" in CALCRIM No. 875 was confusing and prejudicial because there were five assault victims but only one of them was in the area of the shooting. (*Id.* at pp. 1176-1177.) "[B]y following the letter of the instruction, the jury may have found Velasquez guilty of assaulting the other four individuals because firing the shots resulted in a direct and probable application of force to a *person* [the only victim in the garage]." (*Id.* at p. 1177.) Unlike the factual circumstances in *Velasquez*, here the assaults occurred at different times and different places.

### III.

Juan contends that insufficient evidence supports his conviction of two counts of assault with a firearm in violation of due process of law pursuant to the United

5

States and California Constitutions. He points out that investigating police officers did not find the firearm and that his parents testified they were unsure whether the weapon was "real" or "just a toy." Juan asserts that there was no evidence that the firearm was operable or loaded. (*People v. Rodriguez*, *supra*, 20 Cal.4th 1, 11 [crime of assault requires the present ability to inflict a violent injury].)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (2015) 60 Cal.4th 966, 988; *People v. Jackson* (2014) 58 Cal.4th 724, 749.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*People v. Streeter* (2012) 54 Cal.4th 205, 241, disapproved on other grounds by *People v. Harris* (2013) 57 Cal.4th 804, 834.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

A long line of judicial decisions have held that an assault is not committed by a person merely pointing an unloaded gun in a threatening manner at another person. (*People v. Rodriguez*, *supra*, 20 Cal.4th 1, 11, fn. 3.) In *Rodriguez*, our Supreme Court did not consider and decide "[t]he continuing viability of this rule" because the parties did not question and brief the issue. (*Ibid.*; see also, *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 542, fn. 10 [the "'operability' requirement is an anachronism which is incompatible with the realities of a society in which the unlawful use of guns is a major and continuing problem"].) Instead, *Rodriguez* affirmed the rule that a defendant's own words and conduct in the course of an offense may permit the reasonable inference that a firearm was loaded and operable. (*Id.* at pp. 12-14.)

6

Here Juan's behavior during the assaults allows the reasonable inference that the firearm was loaded and operable. Sanchez taunted Juan to "go get [his] gun." Juan returned to his apartment and ran back to Sanchez as he removed the firearm from a sock used to conceal the weapon. Juan pointed the firearm at Sanchez, who dared Juan to "shoot." After Araque's mother called for police assistance, Juan threatened to "get" Sanchez later. Juan hurriedly returned to his apartment where he pointed the firearm at his mother who also dared him to shoot her. Before police officers arrived, Juan fled the apartment through a window and took the firearm with him. Juan's behavior regarding the assaults and his later flight would be meaningless unless the firearm he carried was loaded and operable.

Moreover, Sanchez testified that Juan pointed a firearm at him and Araque's mother confirmed that testimony. The two witnesses also demonstrated their testimony with gestures. Juan's mother testified that she informed an investigating police officer that Juan pointed the firearm at her from a distance of approximately six to ten feet, and that she dared him to shoot her. This evidence is sufficient to support the conviction of two counts of assault with a firearm.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:



YEGAN, J.



PERREN, J.

7

Michael D. Abzug, Judge

Superior Court County of Los Angeles

_____

Donna Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Timothy M. Weiner, Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.