Filed 10/4/16  P. v. Hernandez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTIAN HERNANDEZ,<br><br>    Defendant and Appellant. | B261486<br><br>(Los Angeles County<br>Super. Ct. No. MA061681) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge.  Affirmed.

Thien Houng Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Christian Hernandez appeals from his conviction of assault with a deadly weapon. He contends: (1) he was denied due process and a fair trial by the trial court's response to a jury question during deliberations; and (2) it was error to deny his motion for new trial brought on those same grounds. We affirm.

## PROCEDURAL BACKGROUND

Defendant was charged by information with attempted premeditated murder and assault with a deadly weapon of Michael Massari. Enhancements for personal infliction of great bodily injury (Pen. Code, § 12022.7. subd. (a)), use of a deadly weapon (Pen. Code, § 12022, subd. (b)(1)), and a prior conviction (Pen. Code, § 667.5, subd. (b)) were also alleged.[1]

After the jury reported that it was hopelessly deadlocked on attempted murder the trial court declared a mistrial as to that count.[2] But the jury convicted defendant of assault with a deadly weapon (count 2) and found true the great bodily injury and deadly weapon enhancements.

On December 1, 2014, after it denied defendant's motion for new trial and to continue the sentencing hearing, the trial court struck the deadly weapon enhancement (§ 12022, subd. (b)) and sentenced defendant to eight years in prison on count 2, comprised of the four-year high term, plus a consecutive three years for the great bodily injury enhancement (§ 12022.7, subd. (a)), plus a consecutive one year for the prior conviction enhancement (§ 667.5, subd. (b)).

Defendant timely appealed.

---

[1] All undesignated statutory references are to the Penal Code.

[2] Count 1 was subsequently dismissed pursuant to section 1382 for failure to timely bring to trial.

# FACTS

A.    *The People's Case*

In November 2013, Schooner's Bar in Lancaster was the location of an annual unofficial reunion of past and present local residents. On November 27, the day before Thanksgiving, witness Adam Price went to Schooner's Bar to meet with several friends, including victim Mike Massari. The bar was crowded and it took Price almost half an hour to make it through the crowd to the patio. Price first noticed defendant when defendant bumped into one of Price's friends, Vinnie. Price and Massari were still at the bar patio at about 1:30 a.m. when "last call" was announced and bar security began herding people from the patio into the bar. In the ensuing "traffic jam," Price was about one arm-length behind Massari. Defendant, both drunk and surly, squeezed between Price and Massari. Massari had his back to defendant when defendant "leaned into [Massari] and made a fast motion four, five times. Quick in-and-out motion four or five times." Defendant then ran away. Massari turned around, looked at Price and asked what had happened. Price told Massari it looked like he was just stabbed. When Massari pulled up his sweatshirt, Price saw blood gushing out of a back wound.

Victim Massari testified that he had taken an Adderall and smoked some marijuana before arriving at the bar at about 11:00 p.m. He spent the next few hours with friends in the patio area. During that time, he had about three drinks. Massari recalled moving from the patio back into the bar at about 1:30 or 2:00 a.m. Just as he entered the bar, it felt as if someone had punched him in the back. Price said, "Hey, I think you might have gotten stabbed." Massari lifted his shirt and saw he was bleeding. Massari lay on the ground and waited for the ambulance to arrive. Massari survived the attack.

B.    *The Defense Case*

Defendant testified and admitted stabbing Massari, but claimed it was an accident. He testified that he was at the bar that night with his brother. He was part of a large crowd trying to "funnel in" from the patio to the bar after last call. He was about 10 feet from the door when someone pushed him from behind, causing him to fall onto the person in front of him and then onto the ground. As he tried to get up, someone grabbed

3

him from behind in a "bear hug." While he struggled to get free, defendant saw a knife fall to the ground about a foot away. Believing he was in danger, defendant grabbed the knife. But then someone grabbed his wrist. Defendant testified that, as he struggled, he "accidentally struck somebody in front of me, and I was still trying to free this person off of me, and I didn't want to let go of the knife because I didn't want them to hurt me; so I think that the gentleman in front of me got struck." Defendant did not know the person he stabbed. When defendant was able to break free, he ran away but saw that he was being chased. Defendant ran into a residential neighborhood and hid; he called his brother to come and get him. Defendant came out of hiding when he saw a police car.

## DISCUSSION

*A.    The Trial Court's Response to a Jury Question was Proper*

Defendant contends he was denied due process under the state and federal constitutions by the trial court's response to a jury question during deliberations. He argues the response improperly lowered the prosecution's burden of proof. Defendant is incorrect.

It is well settled that assault is a general intent crime which "does not require a specific intent to injure the victim." (*People v. Williams* (2001) 26 Cal.4th 779, 788, citing *People v. Rocha* (1971) 3 Cal.3d 893, 899.) Consistent with *Williams* and *Rocha*, the pattern jury instruction for assault with a deadly weapon other than a firearm, CALCRIM No. 875, reads:

> "To prove that the defendant is guilty of [assault with a deadly weapon], the People must prove that:
> 1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;
> 2. The defendant did that act willfully;
> 3. When the defendant acted, he was aware of facts that would lead *a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone*;
> 4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person; [¶] AND
> 5. The defendant did not act in self-defense." (Italics added.)

4

In *People v. Velasquez* (2012) 211 Cal.App.4th 1170, the appellate court found CALCRIM No. 875 was a correct statement of the law, but under the circumstances of that case it improperly reduced the prosecution's burden of proof. In *Velasquez*, the defendant was convicted of five counts of assault with a firearm based on evidence five people were at home when the defendants drove by and fired into the residence. Velasquez was convicted of one assault count for each person in the house at the time of the shooting. The appellate court reversed the conviction on four of the five counts because the jury may have misunderstood CALCRIM No. 875 to mean that the prosecution did not need to prove the elements of the crime as to each named victim. "[B]y following the letter of the instruction, the jury may have found Velasquez guilty of assaulting the other four individuals because firing the shots resulted in a direct and probable application of force to" just one of the victims. *Velasquez* stands for the unremarkable proposition that the named victim must have been subject to the application of force. *Velasquez* did not change the well-established rule that the defendant need not have a specific intent to injure the named victim. (*Williams, supra*, 26 Cal.4th at p. 788.)

Here, the jury was given CALCRIM No. 875, as above quoted.[3] During deliberations, the jury submitted the following question:

---

**3** CALCRIM No. 875 further instructs: "Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] The terms *application of force* and *apply force* mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] The People are not required to prove that the defendant actually touched someone. [¶] The People are not required to prove that the defendant actually intended to use force against someone when he acted. [¶] No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was. [¶] Voluntary intoxication is not a defense to assault. [¶] *Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] The term *deadly weapon other than a firearm* is defined in another instruction to which you should refer."

5

> "Ask the judge to clarify if the jury needs to decide whether Count 2 with assault was intended directly to Mike Massari or if the defendant is guilty of assaulting anyone?"

The trial court responded in writing:

> "The law governing Assault with a Deadly Weapon is set forth in instruction 875. Please refer to that instruction."

Defendant objected to this response. Referring the trial court to *Velasquez*, defendant argued it was "directly on point that the court . . . must clarify 875 to indicate that the law requires the People to prove that each named victim has to be the subject of the application of force . . . I can see why jurors might want some clarification on the record, at the bar with other people around my client. My client intended to apply force to someone else, and Mr. Massari got stabbed inadvertently." The trial court found *Velasquez* "completely distinguishable" because it had to do with multiple victims while this case involved just one victim.[4]

The trial court was correct and its response to the jury's question did not reduce the People's burden of proof on any element of the offense. Contrary to defendant's argument, the People did not have to prove defendant stabbed Massari intentionally, rather than inadvertently while trying to stab someone else, because a specific intent to injure the victim is not an element of the offense. Defendant's reliance on *Velasquez* for a contrary result is misplaced. *Velasquez* stands only for the rule that the named victim must have been subject to the application of force. There is no dispute that Massari was stabbed. *Velasquez* did not change the well-established rule that the defendant need not have a specific intent to injure the actual victim. (*Williams, supra*, 26 Cal.4th at p. 788.)

Finally, we observe that defendant testified that the stabbing was an accident, that he did not even intend the acts that resulted in the stabbing. The jury obviously rejected

---

[4] There are references in the briefs to "transferred intent" and "kill zone" theories, but neither is applicable to this straight forward assault with a deadly weapon.

6

that testimony but nothing in CALCRIM No. 875 lessened the prosecution's burden to show the stabbing was not an accident.

B.      *The Motion for New Trial*

Defendant contends the trial court erred in denying his motion for new trial, which was based on his objection to the trial court's response to the jury's question.  Having found no error in that response, the challenge to the ruling on his new trial motion necessarily fails.

**DISPOSITION**

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J