Filed 2/20/20

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SAMUEL TRINIDAD MEDELLIN,<br><br>    Defendant and Appellant. | F076022<br><br>(Super. Ct. No. F14904214)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. John F. Vogt, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Samuel Medellin challenges his convictions for assault with force likely to cause great bodily injury, and their accompanying enhancements for inflicting great bodily injury. We agree with Medellin that the prosecutor prejudicially misstated the law during closing arguments. Our conclusion necessarily finds fault in the CALCRIM instructions defining great bodily injury. The convictions are reversed.

**SEE CONCURRING AND DISSENTING OPINION**

## BACKGROUND

**Trial Evidence**

While Medellin and his friends were at a brewery restaurant one evening, an argument regarding alcohol service ensued between his party and the restaurant staff. The argument became a melee during which Medellin hit two different staff members, one time each.

The first victim suffered a quarter- to half-inch-long cut along his jaw requiring three stitches to close. This injury resulted from a punch.[1] While the victim testified he previously had experienced "worse injuries," he described this injury as "hurt[ing] for a few days," resulting in "a little scar," and his "false tooth … [feeling] a little bit loose after" the impact.

The second victim endured a quarter-inch-long cut on his lip requiring seven stitches to close. This injury also resulted from a punch. The victim described the injury as leaving his lip "swollen for about a week and a half," "hurt[ing] a lot," and scarring. A witness described the injury as "fairly deep" and "bleeding pretty severely."

**Verdict and Sentence**

The jury found Medellin guilty as charged: two counts of felony assault (Pen. Code, § 245, subd. (a)(4)),[2] each with a great bodily injury enhancement found true (§ 12022.7). The trial court placed Medellin on probation and ordered him to serve one year in county jail, suspended on the condition he successfully completes probation.

## DISCUSSION

This appeal presents three issues. One, did the trial court err by not instructing the jury on the lesser included offense of simple assault? Two, are the convictions and

---

[1] Other witnesses testified the victim exclaimed a "head-butt" caused the injury during the melee. At trial, the victim himself repeatedly denied a "head-butt" caused the injury. For simplicity, we will refer to the strike as a punch.

[2] Undesignated statutory references are to the Penal Code.

enhancements supported by sufficient evidence?  And three, did the prosecutor prejudicially misstate the law?

We first find that if the trial erred by not instructing the jury on the lesser included offense, Medellin waived the error.  Second, sufficient evidence supports each verdict.  Third, we find the prosecutor's closing argument, relying on and quoting CALCRIM's great bodily injury definition, prejudicially misstated the law and reverse the convictions.

## I.  Medellin Waived Any Error Related To Lesser Included Offense Instructions

During a preliminary discussion regarding potential jury instructions, the following colloquy occurred:

> "The Court: [W]hat is your position as to any lesser-included offenses?
>
> [Medellin's Attorney]: We're not asking for any lesser included.
>
> The Court: And you're satisfied that there are legitimate strategic purposes for not making that request at this time?
>
> [Medellin's Attorney]: Yes, Your Honor.
>
> The Court: Okay.  Do the People have any input on that?
>
> [The People]: No, Your Honor."

Consequently, the court did not instruct the jury on any lesser included offenses.

Medellin now faults the court for not instructing the jury on the lesser included offenses of simple assault.  (§ 240.)  The People argue the evidence did not warrant instructions on lesser included offenses and, alternatively, that Medellin waived the issue by inviting the court to err.  Medellin counters that the invited error doctrine cannot apply to this issue.

We need not decide whether the evidence warranted lesser included offense instructions because we find that Medellin waived the issue by inviting any error.

> " ' " 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the

3.

issues raised by the evidence [Citations.] ....' [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.] The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." ' [Citations.]

Nevertheless, the claim may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found, however, only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction." (*People v. Souza* (2012) 54 Cal.4th 90, 114 (*Souza*).)

It is clear that the instructional error claim at issue here "may be waived" if counsel causes the error and "clearly [does] so for tactical reasons."[3] (*Souza, supra,* 54 Cal.4th at p. 114.) Those circumstances are present and accordingly we find Medellin waived any error.[4]

Medellin asks us to ignore *Souza, supra,* 54 Cal.4th 90, and find the invited error doctrine does not apply to this issue. He argues the claim cannot be forfeited and cites the following language: " ' "The obligation to instruct on lesser included offenses exists

---

[3] To the extent *People v. Golde* (2008) 163 Cal.App.4th 101, 113-115, decided four years prior to *Souza, supra,* holds otherwise, we believe its holding is incorrect.

[4] In the alternative, Medellin asks us to find his counsel was constitutionally ineffective for declining the lesser included offense instructions. In evaluating an ineffective assistance of counsel claim, we " ' "presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions or inactions can be explained as a matter of sound trial strategy." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125 (*Bell*).)

Reversal is appropriate "only if there is affirmative evidence that counsel 'had no rational tactical purpose' for an action or inaction." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Here, counsel informed the court his actions were legitimately strategic and we will not second guess the representation. (See *People v. Breverman* (1998) 19 Cal.4th 142, 155 (*Breverman*) [rule "prevents the 'strategy,' … of *either* party from presenting the jury with an 'unwarranted all-or-nothing choice' "].)

even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." ' " (*Souza, supra,* 54 Cal.4th at p. 114, quoting *Breverman, supra,* 19 Cal.4th at p. 154.)  We decline the invitation for two reasons.

First, Medellin asks us to infer the Supreme Court in *Souza, supra,* 54 Cal.4th 90, did not "spend a great deal of time" discussing the issue because it was a "death penalty case[]."  Our courts conscientiously consider each issue in every case.  We believe *Souza, supra,* is correct and are bound to follow its logic.  (*Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*); *Bell, supra,* 7 Cal.5th at p. 109 ["The invited error doctrine bars an appellate challenge to the absence of a lesser included offense instruction if the defendant, for tactical reasons, persuaded the trial court to forgo giving the instruction."].)

Second, our conclusion is consistent with the rule requiring trial courts to "instruct on lesser included offenses … even when" the defense "expressly objects to" the instruction (*Souza, supra,* 54 Cal.4th at p. 114) because "the rule seeks the most accurate possible judgment by 'ensur[ing] that the jury will consider the *full range of possible verdicts*' included in the charge, regardless of the parties' wishes or tactics." (*Breverman, supra,* 19 Cal.4th at p. 155.)  "Just as the People have no legitimate interest in obtaining a conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense." (*Ibid.*)  Allowing the defense to cause the error, lose at trial, and automatically obtain a reversal on appeal would reward the defense's failed gambit and eliminate the rule's purpose.[5]

## II. The Evidence Sufficiently Proved Each Charge And Enhancement

---

[5] To be sure, trial court judges are obligated to provide lesser included offense instructions when warranted by the evidence even when the instructions are objected to.

Medellin next contends the evidence for both convictions and each enhancement was insufficient. The reviewing standard is well settled.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Applying these standards, we find sufficient evidence supports each conviction and enhancement. Medellin's contrary contention is rejected.

**A. Additional Background**

Medellin punched the first victim's jaw, creating a laceration requiring three stitches at a hospital to close. The stitches were removed at the hospital three weeks later. The only evidence in the record reasonably, credibly, and directly describing the force with which Medellin hit the victim was the victim's testimony that the impact was "a little bit harder" than preceding attacks from other people. The force behind Medellin's strike lacerated the victim's jaw, while other preceding, less forceful impacts, left no visible injury.

Medellin punched the second victim near the mouth. The victim's lip immediately "split open," requiring seven stitches at a hospital to close. The stitches were in place for "almost two weeks." Multiple witnesses described watching Medellin wind his arm back, run or hop towards the victim, and release a punch downwards connecting with the

6.

victim's mouth.  The victim did not have time to react to the punch.  The resulting injury impaired the victim's ability to drink and eat.

The doctor who treated the second victim at the hospital also testified at trial.  He said that a punch could cause facial bone fractures, and a more forceful punch could "break" or "loosen[]" teeth.

**B. The Assaults Were Sufficiently Proven**

Medellin was charged in each count with violating section 245, subdivision (a)(4), assault with force likely to cause great bodily injury.  Each charge stemmed from separate, single impacts with each victim.

Relative to this appeal, the only issue is whether the force Medellin exerted was "likely to produce great bodily injury."  (§ 245, subd. (a)(4); CALCRIM No. 875)  "[T]he inquiry focuses on 'the force *actually used*,' not 'the force that … *could* have [been] used.' "  (*In re B.M.* (2018) 6 Cal.5th 528, 534.)  "Likely" means more than "a mere possibility."  (*Id.* at pp. 534-535.)  Great bodily injury "means a significant or substantial physical injury."  (§ 12022.7, subd. (f); *People v. Escobar* (1992) 3 Cal.4th 740, 749-750 (*Escobar*).)  Significant or substantial injury is more than a moderate harm.  (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 748 (*McDaniel*); *People v. Miller* (1977) 18 Cal.3d 873, 883 (*Miller*).)

"The force likely to produce bodily injury can be found where the attack is made by use of hands or fists.  [Citation.]  Whether a fist used in striking a person would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied."  (*McDaniel, supra,* 159 Cal.App.4th at pp. 748-749.)  A solitary punch may violate section 245, subdivision (a)(4).  (*In re Nirran W.* (1989) 207 Cal.App.3d 1159, 1161 (*Nirran W.*).)

7.

These guidelines combined explain the evidence must prove more than a mere possibility that the force *actually used* would result in greater than moderate harm. We find the evidence here sufficiently proves each assault.

The following evidence is sufficient to prove the assault against victim one: 1) Medellin struck the victim "a little bit harder" than preceding blows by other people, 2) the force behind Medellin's impact left an injury requiring three stitches to repair, 3) the force loosened the victim's false tooth, 4) the force required to loosen a tooth is greater than the force required to fracture a bone, and 5) a fractured bone is greater than a moderate harm. This evidence could lead a reasonable jury to conclude beyond a reasonable doubt that the assault was "likely" to cause great bodily injury.

The following evidence is sufficient to prove the assault against victim two: 1) by winding his arm back and running towards the victim, Medellin exerted more effort and force into punching victim two than victim one, 2) the force's downward trajectory increased the likeliness the force would cause great bodily injury, 3) *at the time Medellin unleashed his force*, victim two was unaware of the impending impact, increasing the likeliness it would result in great bodily injury, 4) the impact knocked victim two "back," necessitating someone to catch him, and 5) because victim two's injury was arguably worse than victim one's, the force was likewise greater. This combined evidence sufficiently proves the assault was "likely" to cause great bodily injury. (See *Nirran W., supra,* 207 Cal.App.3d at p. 1162 [sufficient evidence to prove assault where force "delivered" "without warning," "knock[ing] [victim] down"].)

**C. The Enhancements Were Sufficiently Proven**

In addition to each assault charge, Medellin was charged with *actually* causing great bodily injury to each victim. The evidence here sufficiently proved great bodily injury to each victim.

The California Supreme Court "has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for

8.

the court but a factual inquiry to be resolved by the jury." (*People v. Cross* (2008) 45 Cal.4th 58, 64 (*Cross*).) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Id.* at p. 66.) "[S]ome physical pain or damage, such as lacerations, bruises, or abrasions is sufficient …." (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.)

" ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the jury to decide." (*Cross, supra,* 45 Cal.4th at p. 64.)

Victim one suffered an injury requiring three stitches at a hospital to repair. The stitches were removed three weeks later. The injury "hurt for a few days," resulted in "a little scar," and loosened his "false tooth."[6] A reasonable jury could properly conclude beyond a reasonable doubt the injury was "significant or substantial physical harm" and more than a moderate injury.

Victim two suffered a more serious injury requiring seven stitches at a hospital to repair. The stitches were in place for nearly two weeks. His lip was "swollen for about a week and a half," "hurt a lot," and scarred. The wound was "fairly deep" and bled "pretty severely." A reasonable jury could properly conclude beyond a reasonable doubt the injury was "significant or substantial physical harm" and more than a moderate injury. (See *People v. Lopez* (2018) 5 Cal.5th 339, 357 [laceration from vagina to anus with "severe bruising" sufficient]; *Escobar, supra,* 3 Cal.4th at pp. 749-750 ["extensive bruises and abrasions," neck pain, and "soreness" sufficient]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733-734 [multiple abrasions and lacerations with "serious swelling

---

[6] The loosened false tooth was not described in any further detail, other than a visit to "a dentist." The record did not disclose any actual treatment received or whether the loosening lingered, or was imagined or resolved.

and bruising" of eye sufficient]; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 ["multiple contusions," "severe discoloration," "swelling," pain, and visibility one day later sufficient]; see also *People v. Flores* (2013) 216 Cal.App.4th 251, 262-263 ["two puncture wounds … requir[ing] four sutures," leaving neither scar nor permanent disability, sufficient to prove "serious bodily injury" in light of "extensive follow-up wound care, and lengthy recovery period"]; *People v. Belton* (2008) 168 Cal.App.4th 432, 440 [broken tooth with sutures to eyebrow and mouth sufficient to prove serious bodily injury]; *People v. Sloan* (2007) 42 Cal.4th 110, 117 [serious bodily injury is " 'essential[ly] equivalent' " to great bodily injury].)

## III. The Prosecutor Prejudicially Misstated the Law

Finally, Medellin argues the prosecutor prejudicially misstated the law in closing argument by arguing an ambiguity in the pattern jury instructions. The People concede the prosecutor misstated the law but allege there was no resulting prejudice.[7] We agree with Medellin.

The prosecutor's erroneous argument, based on the pattern jury instructions, when contrasted with Medellin's argument, presented the jury with two alternative theories of guilt. Because the resulting alternative-theory error is not harmless beyond a reasonable doubt, we will reverse the convictions.

### A. Additional Background

Great bodily injury was first enacted as an enhancement in 1967. At that time, it applied only to burglary, rape, and robbery. (*People v. Wells* (1971) 14 Cal.App.3d 348,

---

[7] The People also argue Medellin forfeited this claim by not objecting in the trial court. We disagree. "[A] defendant need not assert an objection when the error affects the defendant's 'substantial rights.' (§ 1259.) In this regard, ' "the cases equate 'substantial rights' with reversible error[.]" ' " (*People v. Stringer* (2019) 41 Cal.App.5th 974, 981, fn. 2 (*Stringer*); *People v. Velasquez* (2012) 211 Cal.App.4th 1170, 1177, fn. 5; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.) As we will explain, the error was reversible, affecting Medellin's "substantial rights."

356 (*Wells*).) Although the Legislature did not further define great bodily injury, some further definition was needed. For example, in *Wells, supra,* the jury requested further clarification, and the judge instructed the jury great bodily injury means " 'significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury.' " (*Id.* at p. 360.) "The instructions as supplemented provided the jury with adequate guidelines." (*Ibid.*)

One year later, *People v. Richardson* (1972) 23 Cal.App.3d 403, 411, added "moderate harm" to the definition. These two cases became the standard for the CALJIC jury instructions in 1973. (*People v. Caudillo* (1978) 21 Cal.3d 562, 581, overruled by *Escobar, supra,* 3 Cal.4th 740, 748-750 [great bodily injury does not require " 'permanent,' 'prolonged,' or 'protracted' " injury].) The instruction explained that great bodily injury means "significant or substantial bodily injury," not "trivial," "insignificant," or "moderate harm." (CALJIC No. 17.20 (1973 rev.); *Escobar, supra,* 3 Cal.4th at p. 746.)

"Section 12022.7 was originally enacted in 1976 …." (*Escobar, supra,* 3 Cal.4th at p. 746.) Its purpose was to supplant the enhancement specific to burglary, rape, and robbery, with an enhancement " 'applicable to all felonies which do not necessarily involve such injury.' " (*Id.* at p. 747.) This time, the Legislature further defined great bodily injury " 'as a "significant or substantial physical injury" *as provided in the CALJIC instruction.*' " (*Id.* at pp. 747-748.) At nearly the same time, the Supreme Court separately acknowledged great bodily injury "has been defined as meaning significant or substantial bodily injury or damage as distinguished from trivial or insignificant injury or moderate harm" in *Miller, supra,* 18 Cal.3d at p. 883.

The Supreme Court last confronted the meaning of "great bodily injury" in *Cross, supra,* 45 Cal.4th 58. There, the court cited *Miller, supra,* 18 Cal.3d 873, with approval for its recognition that great bodily injury is more than moderate harm. (*Cross, supra,* at

11.

p. 64.)  As illustrated, both the Legislature and judiciary agree that great bodily injury is more than both minor and moderate harms.

"Effective January 1, 2006, the California Judicial Council withdrew its endorsement of the CALJIC instructions and adopted the CALCRIM instructions." (*People v. Reyes* (2008) 160 Cal.App.4th 246, 251.)  The CALCRIM instructions now define great bodily injury as "significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm."  (CALCRIM Nos. 875, 3160.)  This definition differs from the previous CALJIC definition on which the Legislature based the statute.

In contrast to the Legislature and judiciary's clarity, the prosecutor in this case argued harm greater than minor harm alone was sufficient. The prosecutor, referring to CALCRIM Nos. 875 and 3160, which had not yet been read to the jury, argued:

> "[I] want you to focus on one word here; right?  This is at the second sentence 'or,' right?  Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm. So what is – what is sufficient; right?  What do you need?  An injury that is greater than minor.  That is all I need to prove.  And we submit that when someone gets stitches, then it is more than minor.  We submit that when someone has to go to the hospital, that it is more than minor.  We submit that when someone is scarred for a very long period of time or when your dentures get knocked loose, that is more than minor.  And notice this is 'or' right here.  And according to the law, it is sufficient."

Medellin's attorney did not object to this argument.  Instead, he addressed the point in his closing argument:

> "The instruction states that great bodily injury is more than minor or moderate injury.  And you can ask the judge to clarify, but [the] explanation that that word 'or' means that great bodily injury is more than minor harm is not what that instruction means.  You don't choose it can be either minor or moderate.  It's saying that there's – that there's an order. There's minor harm.  There's moderate harm, and then there's great bodily injury, somewhere above that.  That's for you to decide.  And if it could just be – could just be more than moderate harm -- minor harm, then that's what the instruction would be, but it's not.  It's minor or moderate harm."

Neither side argued the point further.

Subsequently, the court instructed the jury and defined great bodily injury, consistent with the CALCRIM definition: "Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm."  The definition was repeated once, as it was necessary for each charge and enhancement.

**B. The Prosecutor's Error**

Juries hold a "special regard" for prosecutors.  (*People v. Hill* (1998) 17 Cal.4th 800, 827-828.)  " ' "A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.  [Citation.]  As the United States Supreme Court has explained, the prosecutor represents 'a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." ' "  (*People v. Peoples* (2016) 62 Cal.4th 718, 792.)

The law governing a prosecutor's closing argument is clear:

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument.  [Citation.]  However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its ... obligation to overcome reasonable doubt on all elements [citation].'  [Citations.]  To establish such error, bad faith on the prosecutor's part is not required.  [Citation.]  '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error.'  [Citation.]

When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' "  (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667 (*Centeno*).)

13.

Here, the prosecutor plainly misstated the law and the People concede as much. The cases defining great bodily injury have long required more than moderate harm but the prosecutor argued more than minor harm alone was sufficient. The prosecutor's misstatement here rises to error because there was " 'a reasonable likelihood the jury understood or applied the [prosecutor's argument] in an improper or erroneous manner.' " (*Centeno, supra,* 60 Cal.4th at p. 667.)

The arguments left the jury with two separate definitions for great bodily injury— greater than minor harm, or, greater than both minor *and* moderate harms. After these competing arguments, the court's actual instructions informed the jury great bodily injury means "greater than minor or moderate harm." In these circumstances, the actual instructions did nothing to alleviate the risk the jury would reasonably misunderstand the law. In this respect, the prosecutor does not solely shoulder the blame.[8]

### C. CALCRIM Instructions Defining Great Bodily Injury Are Ambiguous

The prosecutor's misstatement alone is insufficient to reverse Medellin's convictions. Only if the jury instructions are reasonably susceptible to the prosecutor's argument is there " 'a reasonable likelihood the jury understood or applied the [prosecutor's argument] in an improper or erroneous manner.' " (*Centeno, supra,* 60 Cal.4th at p. 667.)

Medellin argues that CALCRIM Nos. 875 and 3160 define great bodily injury as "greater than minor or moderate harm [which] had the unfortunate consequence of inserting ambiguity into the definition of great bodily injury where none existed before." We agree.

Instructional error claims are reviewed de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "The challenged instruction is considered 'in the context of the instructions

---

[8] We emphasize that bad faith on the prosecutor's part is irrelevant to our inquiry. We do not hold that the prosecutor maliciously misstated the law.

as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 326.)

As mentioned, the jury was instructed consistent with the CALCRIM definition that great bodily injury means "greater than minor or moderate harm." "Under the plain language of the instruction, the jury could have convicted" Medellin if they believed either greater than minor harm *or* greater than moderate harm was sufficient. (*Stringer, supra,* 41 Cal.App.5th at p. 983.) "The instruction's 'use of the word "or" … indicates an intention to use it disjunctively so as to designate alternative or separate categories.' " (*Ibid*.)

This is not the first time a CALCRIM instruction's "or" usage created ambiguity. *Stringer, supra,* is the latest example where "or" created alternative-theory error. The ambiguity there caused the court to "urge the Judicial Council of California to consider revising" the relevant CALCRIM instruction. (*Stringer, supra,* 41 Cal.App.5th at p. 983, fn. 4.)

"Or" was also the culprit in *People v. Brown* (2012) 210 Cal.App.4th 1 (*Brown*). There, the charges involved a deadly weapon. The CALCRIM instructions defined deadly weapon as, in part, "inherently deadly or dangerous …." (*Id* at p. 8.) The instruction's "or" usage created an invalid legal theory as to what constituted a deadly weapon—inherently deadly, which is valid, and inherently dangerous, which is invalid. (*Id*. at pp. 8-9; see *People v. Aledamat* (2019) 8 Cal.5th 1, 13-15 (*Aledamat*) [finding similar problems in related instructions with disjunctive "or" usage].) Similarly here, CALCRIM Nos. 875 and 3160's "greater than minor or moderate harm" language created an invalid legal theory as to what constitutes great bodily injury—greater than minor harm, which is invalid, and greater than both minor and moderate harms, which is valid.

In sum, the CALCRIM great bodily injury definition "may impermissibly allow a jury to" find great bodily injury means greater than minor harm alone is sufficient.

15.

(*Brown, supra,* 210 Cal.App.4th at p. 11.)  "That possibility, however theoretical it may be in most cases, should be obviated by an appropriate modification of the language in" CALCRIM's great bodily injury definition.[9]  (*Ibid.*)

Both the prosecutor's argument and the ambiguity in the CALCRIM instructions were error.  We must next decide whether the error is prejudicial.

### D. Alternative-Theory Error Requires Reversal

We presume the legally invalid theory infected the verdict because jurors are not " ' "equipped to determine whether a particular theory of conviction submitted to them is contrary to law …." ' "  (*In re Martinez* (2017) 3 Cal.5th 1216, 1224.)  We "must reverse the conviction[s] unless, after examining the entire cause, including the evidence, and considering all relevant circumstances," we determine the error is "harmless beyond a reasonable doubt."  (*Aledamat, supra,* 8 Cal.5th at p. 13.)

We are convinced the error is not harmless beyond a reasonable doubt for multiple reasons.  It is entirely possible the jury believed only that "more than minor" harm was sufficient to prove the elements.  The evidence related to the actual injuries sustained was that the injuries were not overwhelmingly severe.  For example, the trial court expressed its reservations several times including stating "[I] have concerns, quite frankly, about the factual showings that I've heard …."[10]  And later, "[T]hroughout the trial I have stated that in my experience on the bench and as a former prosecutor, quite frankly, the extent of injuries in this case is at the least serious end of the continuum."  The trial court

---

[9] Although not before this court, many CALCRIM instructions contain the same ambiguous great bodily injury language.  We do not fault the trial judge for using the approved CALCRIM instructions in this case; the fault lies in the instructions themselves.

[10] These comments were made during trial outside the jury's presence at a Penal Code section 1118.1 motion hearing to dismiss the enhancements.  The court ultimately denied the motion.

concluded by asking this court for "some bright-lined determination of what factually constitutes something more than minor or moderate harm …."[11]

More importantly, the prosecutor specifically highlighted the instructions' ambiguity and adopted it as his theory to prove guilt. He repeatedly emphasized an injury "more than minor" was sufficient, and chose not to argue the injuries were more than moderate. The standard CALCRIM definition did not clarify the point. Our independent review of the photographs admitted into evidence and testimony at trial aligns with the trial court's view of the evidence.

On this record, a reasonable jury could find the injuries were more than minor, but not more than moderate. (Cf. *Aledamat, supra,* 8 Cal.5th at pp. 13-14 [finding error harmless partly because invalid theory not argued to jury].) The prosecutor's erroneous argument that "more than minor" harm is sufficient and the ambiguous instructions defining great bodily injury apply equally to both the assault and the enhancement. For the reasons articulated above, it is also reasonably possible the jury evaluated the force necessary to prove each assault with reference to whether it was likely to cause "more than minor" harm as the prosecutor defined the standard. We are compelled to reverse not only the enhancement findings but also the underlying convictions.

---

[11] These later comments were made at Medellin's sentencing hearing. The Supreme Court made clear in *Escobar, supra,* 3 Cal.4th 740, 751, that the Legislature *intended* to *generally* define great bodily injury, and we are bound to follow their decision. (*Auto Equity, supra,* 57 Cal.2d at p. 455.) To the extent that definition has proven unworkable in practice, that issue is not before this court. (Cf. *People v. Guest* (1986) 181 Cal.App.3d 809, 811-812 [great bodily injury is not unconstitutionally vague, but suggesting it is "an 'I know it when I see it' standard …"].) Further explication of great bodily injury rests with the Legislature and the Supreme Court.

17.

## **DISPOSITION**

The judgment is reversed.  The cause is remanded for further proceedings consistent with this opinion.

_____
SNAUFFER, J.

I CONCUR:


_____
FRANSON, J.

18.

DETJEN, Acting P.J., Concurrence and Dissent.

Samuel Trinidad Medellin (defendant) was convicted of two counts of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)) and was found to have personally inflicted great bodily injury (§ 12022.7, subd. (a)) as to each count. On appeal, he claims (1) the trial court erred by failing to instruct on the lesser included offense of simple assault; (2) the evidence was insufficient to sustain either conviction or enhancement finding; and (3) the prosecutor utilized an ambiguity in the jury instructions to prejudicially misstate the law in closing argument regarding the meaning of great bodily injury.

The majority rejects the first two contentions. I concur in those portions of the opinion. I respectfully dissent, however, from my colleagues' conclusion reversal is required because the jury instructions on great bodily injury are ambiguous and the prosecutor prejudicially misstated the law by arguing the ambiguity. I find no instructional ambiguity and no prejudicial prosecutorial misconduct. I would affirm the judgment.

Defendant was involved in a fight in which he punched two people, one time each. As to one victim, defendant inflicted a cut on the chin that required three stitches to close. As to the other victim, defendant inflicted a cut on the lip that required seven stitches to close. Both victims described suffering pain from their injuries, and each was left with a scar.

At the conclusion of the evidentiary portion of trial, the trial court gave the jury general instructions. In pertinent part, the court instructed:

> "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions. Please pay careful attention to all of these instructions and consider them together. . . .

---

[1] All statutory references are to the Penal Code.

"Some words or phrases used during the trial may have legal meanings that are different from their meanings in every day use. If so, these words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in the instructions are to be applied using their ordinary every day meanings."

Just before counsels' summations, the trial court reminded jurors that nothing the attorneys said in their concluding arguments was evidence. The court also told jurors: "If they state the law to you and it turns out to be different than the instructions that I give you, then you're to rely on the instructions that I give."

During his opening argument, the prosecutor stated:

"Great bodily injury. So what does great bodily injury mean under this jury instruction [regarding assault by means of force likely to produce great bodily injury]; right? It tells you that it means significant or substantial physical injury and it further defines it as it is an injury that is greater than minor or moderate harm. Okay. So we submit that initially . . . any punch towards the face as, according to the doctor, as indicated can lead to great bodily injury. And as such, this is met. But remember we do have that additional allegation, right, that great bodily injury resulted.

"So it's the same jury instruction — it's a separate jury instruction that redefines what great bodily injury is. And I want you to focus on one word here; right? This is at the second sentence 'or,' right? Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. So . . . what is sufficient; right? What do you need? *An injury that is greater than minor. That is all I need to prove*. And we submit that when someone gets stitches, then it is more than minor. We submit that when someone has to go to the hospital, that it is more than minor. We submit that when someone is scarred for a very long period of time or when your dentures get knocked loose, that is more than minor. *And notice this is 'or' right here. And according to the law, it is sufficient*." (Italics added.)

Defense counsel did not object to the emphasized portions, which, I agree with the majority, misstate the law. In defense counsel's summation, however, he told jurors: "The instruction states that great bodily injury is more than minor or moderate injury. And you can ask the judge to clarify, but [the prosecutor's] explanation that that word

2.

'or' means that great bodily injury is more than minor harm is not what that instruction means.  You don't choose it can be either minor or moderate.  It's saying . . . that there's an order.  There's minor harm.  There's moderate harm, and then there's great bodily injury, somewhere above that.  That's for you to decide.  And . . . if it could just be more than . . . minor harm, then that's what the instruction would be, but it's not.  It's minor or moderate harm."

In his closing argument, the prosecutor asserted the victims' cuts constituted great bodily injury.  He did not, however, touch upon the meaning of the term.

After counsels' summations, the trial court instructed concerning the charged crimes and enhancements.  Pursuant to CALCRIM No. 875, it instructed that for assault by means of force likely to produce great bodily injury, "[g]reat bodily injury means significant or substantial physical injury.  It is an injury that is *greater than minor or moderate harm*."  (Italics added.)  Pursuant to CALCRIM No. 3160, it repeated this definition with respect to the section 12022.7 enhancement.

The majority's decision to reverse the judgment in this case arises from its conclusion the definition of great bodily injury in CALCRIM Nos. 875 and 3160 is ambiguous.  I disagree.  The definition in those instructions correctly states the law without ambiguity.

Appellate courts apply the de novo standard of review to a claim of instructional error.  (*People v. Rivera* (2019) 7 Cal.5th 306, 326; *People v. Posey* (2004) 32 Cal.4th 193, 218.)  " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' [Citation.]  When a defendant claims an instruction was subject to erroneous interpretation by the jury, he must demonstrate a reasonable likelihood that the jury misconstrued or misapplied the instruction in the manner asserted.  [Citation.]  In determining the correctness of jury instructions, we consider the entire charge of the court, in light of the trial record.  [Citation.]"  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 926.)

3.

"Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate. [Citations.]" (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066; accord, e.g., *People v. Cross* (2008) 45 Cal.4th 58, 63-64; *People v. Escobar* (1992) 3 Cal.4th 740, 749-750; *People v. Drayton* (2019) 42 Cal.App.5th 612, 614; see § 12022.7, subd. (f).) In other words, it is significant or substantial physical injury that is more than minor or moderate. Fairly read, CALCRIM Nos. 875 and 3160 so state, and defendant's jury was so instructed.

"[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context[.]" (*People v. Stone* (2008) 160 Cal.App.4th 323, 331.) Thus, it is improper to assess the correctness of the instructional definitions of great bodily injury by focusing exclusively on the use of "or" in the phrase "minor or moderate harm." Rather, that phrase cannot be divorced from the one that immediately precedes it: "injury that is *greater than*" (italics added). "[I]njury that is greater than minor or moderate harm" cannot reasonably be read to mean injury that is more than minor but less than moderate. Such an interpretation simply does not make sense, legally or grammatically, particularly when the phrase is preceded by the explanation that great bodily injury means physical injury that is "significant or substantial." In my view, there is no reasonable likelihood the jury would parse the instruction in such a tortured way as to create the ambiguity the majority finds. (See *People v. Kelly* (2007) 42 Cal.4th 763, 791; see also *Boyde v. California* (1990) 494 U.S. 370, 380-381.) "We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions. [Citations.]" (*People v. Coddington* (2000) 23 Cal.4th 529, 594, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

The majority relies on *People v. Stringer* (2019) 41 Cal.App.5th 974. That case concerned the CALCRIM instruction that sets out the elements of aggravated kidnapping in violation of section 209, subdivision (a). The Court of Appeal explained that the

statute describes four types of aggravated kidnapping, three of which permit the kidnap victim to be the same person as the person being extorted or from whom the ransom or reward is sought, but one of which requires a primary victim (the kidnap victim) and a secondary victim (the person from whom the defendant seeks to exact money or something valuable). (*Stringer*, *supra*, at pp. 981-982.) As given, the jury instruction listed, as one of the elements, that the defendant kidnapped or detained the other person " 'to commit extortion or to get money or something valuable . . . ." (*Id.* at p. 982, italics omitted.) The defendant claimed this portion of the instruction was erroneous because it presented two theories of liability — kidnapping for extortion and kidnapping to exact from another person money or a valuable thing — without telling jurors, as to the latter theory, that the kidnapping must be perpetrated to exact money or property from another person. Thus, he argued, under the instruction, the jury could impermissibly find him guilty if he sought to exact money or property from the kidnap victims. (*Id.* at pp. 982-983.) The Court of Appeal agreed, stating: "Under the plain language of the instruction, the jury could have convicted [the defendant] if he perpetrated the kidnappings 'to commit extortion *or* to get money or something valuable.' The instruction's 'use of the word "or" . . . indicates an intention to use it disjunctively so as to designate alternative or separate categories.' [Citation.]" (*Id.* at p. 983.)

*Stringer* may well be correctly decided with respect to the instruction before it. It does not, however, have persuasive force with respect to the definitions of great bodily injury in CALCRIM Nos. 875 and 3160. The instruction in *Stringer* contained no phrase similar to "greater than," and the word "or" in the great bodily injury definitions must be read in conjunction with the remainder of those definitions. *Stringer* does not suggest otherwise and does not constitute authority supporting a finding CALCRIM Nos. 875 and 3160 are ambiguous.

*People v. Brown* (2012) 210 Cal.App.4th 1, which the majority also discusses and on which defendant relies, similarly differs. There, the appellate court examined a

previous version of CALCRIM No. 875 that stated, in part: " 'A deadly weapon is any object, instrument, or weapon that is inherently deadly *or dangerous* or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury.' " (*Brown*, *supra*, at p. 8, italics added.)  The defendant, who had used a BB gun in perpetrating an assault, argued the instruction permitted the jury to convict him of assault with a deadly weapon if it found the BB gun was (1) an inherently deadly weapon, (2) an inherently dangerous weapon, or (3) used in a manner capable of causing and likely to cause great bodily injury.  The defendant claimed that under the language of section 245, only the first and third theories of criminal liability were authorized.  (*Brown*, *supra*, at p. 9.)  The Court of Appeal agreed (*ibid*.), concluding the instruction "may impermissibly allow a jury to convict a defendant of assault with a deadly weapon if it finds the weapon employed was inherently dangerous, even if it rejects the notion that the instrument was inherently deadly or used in a manner capable of causing and likely to cause death or great bodily injury." (*Id*. at p. 11.)  The court further accepted the defendant's argument the error resulted in the jury being permitted to rely on a legally incorrect theory in convicting him.  (*Id*. at pp. 11-12.)

As in *Springer*, the syntax of the portion of the instruction in *Brown* is markedly different from the one before us in defendant's case.  I do not find the opinion persuasive with respect to the facts of the case at bench.[2]

---

[2]     Defendant also relies on a case from this court, *People v. Velasquez* (2012) 211 Cal.App.4th 1170.  That case dealt with portions of CALCRIM No. 875 that referred to the application of force to " 'a person' " and " 'to someone.' " (*Velasquez*, *supra*, at p. 1176, italics omitted.)  This court agreed with the People that CALCRIM No. 875 correctly stated the law but found the potential for juror confusion "obvious." (*Velasquez*, *supra*, at p. 1176.)  This was so because the defendant was charged with five counts of assault with a firearm, with each count identifying as the victim a different member of the family at whose house the defendant shot.  Under the circumstances, the jury erroneously could have believed that if any member of the family was at risk of injury, the People proved each count.  (*Id*. at pp. 1176-1177.)  As the majority impliedly

When read as a whole, the definitions of great bodily injury in CALCRIM Nos. 875 and 3160 clearly informed jurors that great bodily injury meant significant or substantial physical injury, i.e., injury that was greater than moderate harm. There is simply no reasonable likelihood the instructions led jurors to believe they could find great bodily injury based on injury that was more than minor but less than moderate, or that they could choose which level of harm to use. Accordingly, I find no instructional error. (See *People v. Tate* (2010) 49 Cal.4th 635, 696.) As such, I additionally conclude that the trial court did not instruct the jury with two possible theories of guilt. I do not agree with the majority's position that the concerns addressed in *People v. Aledamat* (2019) 8 Cal.5th 1, 3, 6-8, exist here.

That the prosecutor made the argument he did is inexplicable. Whether he did so through ignorance of the law or in bad faith is immaterial; his argument was improper in either event. (*People v. Centeno* (2014) 60 Cal.4th 659, 666.)[3]

The majority finds that the prosecutor's misstatement alone is insufficient to warrant reversal of defendant's convictions. I agree.

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]' " (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667.) Here, any harm from the prosecutor's misstatement of the law was cured by the

---

recognizes, *Velasquez* has no application to the issue of whether error occurred in the present case.

**3**      I will assume the claim of prosecutorial misconduct was preserved for appeal, despite defense counsel's choice to counter the argument with a correct explanation of the law rather than objecting at the time the argument was made. (See, e.g., *People v. Parson* (2008) 44 Cal.4th 332, 359; *People v. Frierson* (1991) 53 Cal.3d 730, 749.) The trial court was not required to intervene absent a timely objection. (See *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 170.)

trial court's correct instructions on the subject. "When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 717.) Defendant's jury was admonished more than once to follow the court's instructions if they conflicted with the attorneys' statements. Absent any contrary indication — and there is none — I presume the jury followed these instructions. (*People v. Gray* (2005) 37 Cal.4th 168, 217; see *People v. Boyette* (2002) 29 Cal.4th 381, 436.)

      I would affirm the judgment in its entirety.


                                          _____

                                             DETJEN, Acting P.J.