Filed 1/25/23  P. v. Velasquez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDREW FRANCISCO VELASQUEZ,<br><br>    Defendant and Appellant. | F080617<br><br>(Super. Ct. No. VCF211156A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Carlos A. Martinez, Julie A. Hokans and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2011, a jury convicted Andrew Francisco Velasquez (appellant) of numerous offenses based on the 2011 gang-related discharge of a firearm into an occupied residence. The trial court sentenced him to 15 years to life plus 23 years in state prison. We affirmed appellant's conviction on appeal, and his judgment became final in 2013. (*People v. Velasquez* (2012) 211 Cal.App.4th 1170.)

In 2018, appellant filed a petition for writ of habeas corpus. Pursuant to a ruling on an order to show cause, the matter was remanded to the trial court to consider whether to exercise its discretion to strike one of appellant's gang enhancements pursuant to Penal Code section 1385.[1] At the ensuing hearing, the trial court declined to strike the gang enhancement.

On appeal, appellant contends the trial court's ruling was an abuse of discretion. We conclude the trial court did not err. In supplemental briefing, appellant claims he is entitled to the retroactive application of several new laws enacted after his sentencing. We conclude these new laws do not apply retroactively to appellant because his judgment was final prior to their enactment, and the habeas corpus proceedings did not render the judgment nonfinal. We affirm.

## BACKGROUND

### I.      The 2011 Trial and Conviction.

In 2011, a jury convicted appellant of shooting at an inhabited dwelling (§ 246; count 1), five counts of assault with a firearm (§ 245, subd. (a)(2); counts 3-7), carrying a loaded firearm by a gang member (former § 12031, subd. (a)(1), 2(C); count 9),

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

misdemeanor carrying a loaded firearm (former § 12031, subd. (a)(1), (2)(G); count 10), and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 11).**2**

The jury also found true the allegations in counts 1, 3-7, and 10, that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subds. (b)(1)(B)-(C), (b)(4), (d)), the allegation in count 1 that he personally discharged a firearm (§ 12022.53, subd. (c)), and the allegations in counts 3-7 that he personally used a firearm (§ 12022.5, subd. (a)).

The trial court sentenced appellant to an indeterminate term of 15 years to life on count 1, plus a determinate term of 23 years. The determinate term consisted of the upper term of three years on count 9, plus 20 years for the section 12022.53, subdivision (c) enhancement on count 1. The sentences on the remaining counts were ordered to run concurrently or stayed pursuant to section 654.

In *People v. Velasquez*, *supra*, 211 Cal.App.4th at pp. 1172–1174, we summarized the underlying facts of appellant's case as follows:

> "Adolfo Hurtado returned home from work about 9:45 p.m. on the day of the shooting. He was in his bedroom asleep when he heard knocking on his bedroom door and was told by a family member that he had heard gunshots and the family was afraid he had been shot. Adolfo's bedroom was located at the back of the residence. Inside the residence at the time were Adolfo's mother, father, and his brother Oliverio Hurtado. Adolfo went to the front yard of the house. The only person he saw outside was his brother Juan Hurtado. He did see a car go by with its lights off. Adolfo thought it was a small Honda.
>
> "The house sustained a broken window near where Adolfo's mother was sleeping in the garage and a hole in the wall near the kitchen area. Five separate bullet holes were found in the structure. Ten 9-millimeter shell

---

**2** Section 12031 was repealed effective January 1, 2012 (Stats. 2010, ch. 711, § 4) and reenacted without substantive change in section 25850, subdivision (a) (Stats. 2010, ch. 711, § 6).

casings and one intact cartridge were located in the street about 100 feet from the residence. Three bullet fragments were located near the structure.

"Adolfo admitted he hung around with 'Northerners' in high school because most people in his high school were Northerners (Nortenos). But by the time of the shooting, he and his brother Leo Hurtado, Jr., hung out with 'Southerners' (Surenos).

"Leo Hurtado, Sr., was in his bedroom watching television when the shooting occurred. His wife was in the garage lying on a bed.

"Juan was in the living room of the house with his brother Oliverio when he heard the gunshots. Juan went outside to see what was going on. He heard two car doors close and then saw a black Honda depart. The vehicle had a loud exhaust. Juan also was able to identify the vehicle for the police later that night because of the distinct taillights on the vehicle.

"Ali Machuca was in front of her house on the night in question when she heard gunshots. A dark vehicle sped by her house a short while later. Machuca went to the victim's house to make sure no one had been hurt. While there she heard a vehicle that sounded like the same car that had passed by earlier on a nearby street.

"Officer Eliseo Mendez heard numerous gunshots while on patrol in the area. Within minutes a black Honda Civic driving at a high rate of speed passed in front of him, failed to stop for a stop sign, turned off its headlights, and then drove into a residential driveway. The passenger exited the vehicle as Mendez exited his patrol vehicle. Mendez ordered the passenger to stay inside the vehicle, but the passenger proceeded to the front door of the residence. Mendez ordered the passenger to show his hands. When the passenger refused, Mendez shot the passenger with his Taser. The passenger was [appellant]. [Appellant] dropped a nine-millimeter handgun and a loaded magazine when shot with the Taser. A second magazine for the gun was found later in [appellant]'s pocket.

"Mendez later determined the driver of the vehicle was Glenn Martinez, who also was arrested that night.

"Martinez was the prosecution's star witness. [Appellant] is Martinez's cousin. Martinez was driving his mother's Honda Civic on the night of the shooting. He had gone to the house of his cousin, Ruben Herrera. [Appellant] also was there. Around 9:30 p.m., [appellant] asked Martinez for a ride to 'drop something off.' They had driven for a short

4.

distance when [appellant] asked Martinez to turn right on the street where the Hurtados lived.  [Appellant] told Martinez to stop along the side of the road.  [Appellant] exited and walked towards the back of the vehicle.  Martinez then heard some gunshots that sounded close by.  Seconds later [appellant] reentered the vehicle and told Martinez, 'Just get the fuck out of here.'  Martinez never saw [appellant] with a gun.  Martinez drove back to Herrera's house.  They were pulled over by a police officer just as they arrived at Herrera's house.

"In exchange for his testimony, Martinez accepted an agreement that would result in a 12-year prison sentence.

"In his statement to the police, [appellant] admitted that he associated with the 'Northern Structure' prison gang.

"Gunshot residue tests performed on [appellant] and Martinez five hours after the incident were negative.  Testing was able to determine that one of the bullet fragments shared the same characteristics as the handgun recovered from [appellant], but there was not enough individual detail for an identification.  Five of the cartridge cases found at the scene were extracted from this handgun and most likely were fired from the handgun.  The other cartridge cases were similar, but there was not enough detail to permit identification.

"The prosecution also offered testimony to establish that Leo, Jr., and Adolfo were members of a Sureno criminal street gang.  The expert opined that Oliverio associated with 'Southern' gangs, and [appellant] was an active member of the Norteno criminal street gang.  Finally, the expert opined the crime was committed for the benefit of the Norteno criminal street gang.

"[Appellant] presented witnesses who attempted to provide him with an alibi for the time of the shooting." (*People v. Velasquez*, *supra*, 211 Cal.App.4th at pp. 1172–1174, fn. omitted.)

## II.    Direct Appeal and Remand.

Appellant appealed his conviction to this court.  We reversed appellant's convictions for assault with a firearm in counts 3, 4, 5, and 7, and vacated his conviction for carrying a loaded firearm in count 10, but otherwise affirmed the judgment.  (*People v. Velasquez*, *supra*, 211 Cal.App.4th at p. 1178.)  We remanded the matter for the trial

court to issue a new abstract of judgment and for the possible retrial of the reversed counts. (*Ibid*.)

Following remand, the People declined to retry appellant on the reversed counts. On June 13, 2013, the trial court dismissed counts 3, 4, 5, 7, and 10, but directed that "[a]ll other orders remain as stated" at appellant's initial sentencing hearing. Thus, appellant's sentence of 15 years to life plus 23 years remained unchanged. Appellant did not file another appeal.

## III.    The 2018 Petition for Writ of Habeas Corpus.

On February 1, 2018, appellant filed a petition for writ of habeas corpus in the California Supreme Court, contending his trial counsel was ineffective for failing to argue at his sentencing hearing that the trial court should exercise its discretion to dismiss his gang enhancements pursuant to section 1385. Appellant's claim was based on the Supreme Court's then recent holding in *People v. Fuentes* (2016) 1 Cal.5th 218, 222, that "a trial court has the discretion to strike the gang enhancement altogether under section 1385[, subdivision] (a)."

On September 12, 2018, the California Supreme Court issued an order to show cause "why [appellant] is not entitled to relief," returnable before the Tulare County Superior Court. The Honorable Nathan D. Ide of the Tulare County Superior Court issued an order to show cause. On March 6, 2019, Judge Ide issued a ruling stating he did not find ineffective assistance of counsel because the law was unclear at the time of appellant's sentencing. However, Judge Ide "remanded" the matter to the Honorable Brett R. Alldredge, the Tulare County Superior Court judge who presided over appellant's trial, with the following instructions:

> "The Court finds that due to the unsettled law at the time, the [trial] Court did not explicitly state on the record that it would consider Penal Code [s]ection 1385 and reject to use its discretion to strike the gang enhancement at issue. While this Court infers that the [trial] Court did not intend [to] strike the gang enhancement, it also believes that [appellant] has

6.

established that the [trial] Court should clarify whether it considers and declines to exercise its discretion to strike the gang enhancement under Penal Code [section] 1385.

"The matter is remanded to the [trial] Court to clarify whether it exercised its discretion under Penal Code [section] 1385 to strike or decline to strike the gang enhancement in this matter, and if not, whether it will do so in this matter."

The matter was then set for a hearing in the trial court. Prior to the hearing, appellant filed a "Statement in Mitigation of Sentence," requesting the trial court strike the section 186.22, subdivision (b)(1) gang enhancement attached to count 1. This enhancement added 15 years to life to appellant's sentence pursuant to section 186.22, subdivision (b)(4)(B). It also made count 1 eligible for the section 12022.53, subdivision (c) use of a firearm enhancement, which added an additional 20 years to his sentence. (See § 12022.53, subd. (a)(17).)

In the statement in mitigation, appellant argued the trial court should strike the gang enhancement because he was 19 years of age at the time of the offense, held two jobs, had two young children, and had no prior criminal record. Attached to the statement were over a dozen letters of support from family and friends. Appellant also sent a handwritten letter directly to the court, stating he was remorseful for his actions and requested leniency.

At the June 12, 2019, hearing on whether to strike the gang enhancement, the trial court began by stating it had carefully read and reviewed appellant's letter to the court, statement in mitigation, and other letters in support. The court then expressed its "preliminary intended findings." It began by stating that "[t]o the extent that [appellant] argues that the sentence imposed by the Court pursuant to a true finding made by the jury is excessive, egregious, or not supported by the facts would be a legal fiction." It explained that the evidence at trial clearly supported the jury's true finding, the sentence comported with what is proscribed by the Legislature, and based on the record at trial, this was "clearly" not a "mitigating case," but an "aggravated case." It then clarified that

even if it thought the sentence was "too harsh," it would not strike the enhancement given the "obvious facts of the case" and the absence of "unusual circumstances."

Appellant's counsel responded it was not their position that the gang enhancement was not proven at trial, but that appellant is deserving of an exercise of discretion pursuant to section 1385. Counsel then outlined the "unusual" circumstances she believed supported dismissal of the gang enhancement. She noted that most of the shots appellant fired at the residence struck the garage, and that there was no evidence appellant yelled gang slurs or wore gang clothing during the shooting. She also reiterated appellant was 19 years old at the time of the offense, was working two jobs, and is supported by family and friends, as evidenced by the letters submitted to the court.

The People opposed dismissal and responded that because the jury found the gang enhancement true beyond a reasonable doubt, appellant's arguments as to the strength of the evidence are irrelevant. The People also argued appellant's case is not an "unusual" case warranting the exercise of discretion, as appellant "picked out a house that had innocent victims inside of it and emptied a clip into it."

After listening to the arguments of counsel, the trial court stated it wanted to be clear that appellant was not being resentenced, and that the only issue before the court was whether it should exercise its discretion to strike the gang enhancement. The trial court then ruled it would not strike the enhancement, stating: "For me to grant Mr. Velasquez his motion to strike the gang enhancement, I would have to find there to be unusual circumstances to do so and to find that they are in the interest of justice to do so. And based upon the record in this case, I cannot honestly do so."

## DISCUSSION

### I. The Trial Court did not Abuse its Discretion in Declining to Strike the Gang Enhancement.

Appellant contends the trial court's refusal to strike the gang enhancement was an abuse of discretion. He argues the trial court failed to consider his postconviction

conduct and other mitigating factors, did not apply the correct legal standard, ruled contrary to the "letter and spirit of the law," and failed to order a supplemental probation report.

### A.    Standard of Review.

"[A] trial court has the discretion to strike [a section 186.22] gang enhancement altogether under section 1385[, subdivision] (a)." (*People v. Fuentes*, *supra*, 1 Cal.5th at p. 222.)  Thus, a trial court may dismiss a gang enhancement "in furtherance of justice." (§ 1385.)

A trial court has broad but not absolute power to dismiss an action under section 1385.  (*People v. Orin* (1975) 13 Cal.3d 937, 945.)  The trial court is guided by the "amorphous concept" that any dismissal be " 'in the furtherance of justice.' " (*Ibid*.) This requires the court to consider both the defendant's constitutional rights and the interests of society represented by the People.  (*Ibid*.)  The reason for dismissal must be " 'that which would motivate a reasonable judge.' " (*Ibid*.)

We review a trial court's ruling under section 1385 under the deferential abuse of discretion standard.  (*People v. Williams* (1998) 17 Cal.4th 148, 158.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

### B.    The trial court's ruling was reasonable and based upon the consideration of permissible factors.

We conclude the trial court's ruling was not an abuse of discretion.  Appellant's conduct was especially vicious and callous.  Appellant acted for no apparent reason other than to benefit his gang.  He discharged a firearm 10 times into an occupied residence. Several of the bullets nearly struck one of the victims as she slept.

Appellant's attempts to minimize his conduct by pointing to the absence of gang slurs or clothing, or the fact that several of the bullets struck the garage area of the house, are unpersuasive.  Appellant put the life of every person inside of that residence at risk,

and the jury found the gang enhancement true beyond a reasonable doubt. Given the egregious nature of his conduct, the trial court reasonably concluded the mitigating factors offered by appellant, including his age, lack of criminal record, and supportive letters of family and friends, were insufficient to warrant exercising its discretion to strike the gang enhancement.

Appellant contends the trial court's "most significant error" was its failure to consider appellant's postconviction conduct. The parties disagree as to whether the trial court was required to consider appellant's postconviction conduct in determining whether to exercise its discretion under section 1385. Appellant relies on authority supporting consideration of postconviction conduct in the context of a resentencing hearing. (See, e.g., *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460; *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Bullock* (1994) 26 Cal.App.4th 985, 990; *Van Velzer v. Superior Court* (1984) 152 Cal.App.3d 742, 744; § 1172.1, subd. (a)(4).) Respondent counters that because appellant was not resentenced, such authority is inapplicable.

We need not resolve whether the trial court was *required to consider* appellant's postconviction conduct because the record firmly establishes the trial court *did consider* appellant's postconviction conduct. The trial court acknowledged it received appellant's filings, including the statement in mitigation, letters of support, and a letter from appellant in which he details "the progress that he's made in prison." The trial court reiterated that it reviewed everything appellant filed and listened carefully to the arguments of counsel. Thus, the trial court was unquestionably aware of the materials describing appellant's postconviction conduct and considered them in rendering its decision.

Appellant relies primarily on the trial court's comments at the beginning of the hearing that it was "not sure if it's legally appropriate for [the court] to consider the progress that [appellant] made after he was sentenced." This reliance is misplaced. When the trial court made these comments, it invited counsel to address its concerns.

10.

Appellant's counsel responded it was their position that the court should consider appellant's letter and the "progress" he has made while incarcerated. After hearing from counsel, the trial court never stated it would *not* consider appellant's postconviction conduct and reiterated several times that it had read and considered all of appellant's arguments. Therefore, the trial court's preliminary comments are insufficient to establish that it did not consider appellant's postconviction conduct.

We are also unpersuaded by appellant's contention that the trial court did not consider his postconviction conduct because it did not reference it in its ruling. "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Appellant provided very limited information regarding his postconviction conduct and placed almost no emphasis on it during the trial court hearing. Instead, appellant focused on other factors, including the circumstances of the offense and his personal characteristics at the time he committed the offense. His statement in mitigation includes no reference to his postconviction conduct, and in his letter to the court, he only briefly references his involvement in self-help groups and organized sports. His letters of support from friends and family include only one brief reference to his involvement in alcoholics anonymous and narcotics anonymous, and one similarly brief reference to his involvement in educational activities. It would be unreasonable to require the trial court to comment on every potentially relevant factor, let alone a factor only briefly mentioned by appellant. Therefore, the fact that the trial court did not mention appellant's postconviction conduct in issuing its ruling does not establish that it did not consider it.

Appellant also makes the conclusory assertion that the trial court dismissed "the need to consider factors in mitigation." This is belied by the record. The trial court stated it listened carefully to the arguments of counsel and reviewed everything that was submitted. Thus, the court considered these factors, but they were insufficient to

11.

persuade the court that the exercise of its discretion to dismiss the gang enhancement was appropriate.

We also find the trial court understood the scope of its discretion and applied the correct legal standard in exercising that discretion. Appellant argues the trial court confused the exercise of its discretion under section 1385 with improperly substituting its "judgment for that of the Legislature." However, this statement does not suggest the trial court incorrectly believed it could not strike the gang enhancement, or that striking the enhancement would violate the separation of powers. Rather, the court expressed that it would not override punishment designated by the Legislature where "the obvious facts of the case" do not warrant the exercise of discretion.

Appellant similarly contends the trial court's statement there were no "unusual circumstances" to warrant dismissal of the enhancement suggests it applied the wrong legal standard. In *People v. Fuentes*, *supra*, 1 Cal.5th at pp. 222, 224–225, our high court clarified that even though section 186.22, former subdivision (g), provides that a court may only strike additional punishment for gang enhancements "in an unusual case where the interests of justice would best be served," a court may still strike a gang enhancement outright pursuant to section 1385. Appellant argues the trial court's use of the phrase "unusual circumstances" suggests it applied the standard set forth in section 186.22, former subdivision (g), rather than section 1385.

We disagree. When the trial court first used the phrase "unusual circumstances," it was not expressing the applicable legal standard. Rather, the court explained that given the aggravated nature of appellant's conduct, dismissal of the gang enhancement would not be warranted unless appellant provided compelling reasons to do so. The phrase "unusual circumstances" was then used by appellant's counsel in arguing that his case was distinguishable from other cases involving the same charges, and that appellant had unique personal characteristics warranting the striking of the gang enhancement. The trial court's concluding statement that it "would have to find there to be unusual

12.

circumstances" was a rejection of appellant's counsel's argument and a reaffirmation that there was nothing unique or "unusual" about appellant or the case warranting striking the gang enhancement.

Appellant next argues the trial court's ruling was "contrary to the letter and spirit of the law" because the "current trend in felony sentencing" is to move away from "more draconian sentencing measures." He argues that a litany of recent legislative enactments have made clear that in California the "policies underlying felony sentencing are shifting to place more emphasis on rehabilitation than previously," and that the trial court's ruling did not reflect this change in emphasis. This argument lacks merit. The question before this court is whether the trial court abused its discretion in declining to strike the gang enhancements. To the extent this "trend" exists, we fail to see how it impacts our inquiry on appeal absent some applicable change in the law.

Finally, appellant contends he was entitled to a supplemental probation report prior to the hearing. However, a supplemental probation report is only required when a defendant is resentenced. (§§ 1203, subd. (b)(1), 1191; Cal. Rules of Court, rule 4.411.) Appellant was not resentenced. Rather, his matter was sent to the trial court to clarify whether it previously exercised its discretion under section 1385, and if not, whether it would do so now. Because appellant was not resentenced, there is no authority mandating a supplemental probation report, and therefore the trial court did not err in failing to order its preparation.

Based on this record, appellant has not demonstrated that the trial court's ruling was "irrational or arbitrary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Therefore, our review for an abuse of discretion reveals the trial court did not err, and this claim is without merit.

13.

**II. The Legislative Changes Cited by Appellant do not Apply Retroactively Because Appellant's Judgment was Final in 2013, and its Finality was not Impacted by the Subsequent Habeas Proceedings.**

In supplemental briefing, appellant contends that certain legislative changes enacted after his case became final in 2013 apply retroactively pursuant to *In re Estrada* (1965) 63 Cal.2d 740. These new laws include Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 1–5), which amended section 186.22 to modify the showing necessary to sustain gang offenses and enhancements, and added section 1109, which requires bifurcation of gang enhancement allegations; Senate Bill No. 620 (2017–2018 Reg. Sess.) (Stats. 2017, ch. 682, § 2), which gave trial courts discretion to strike or reduce certain firearm enhancements pursuant to section 1385 (see *People v. Tirado* (2022) 12 Cal.5th 688, 692); and Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1), which amended section 654 to give trial courts discretion not to impose the provision providing for the longest term of imprisonment (§ 654, subd. (a)).

Under *Estrada*, we assume, absent evidence to the contrary, that an amendatory statute "mitigat[ing] the possible punishment for a class of persons" is "presumptively retroactive and applie[s] to all persons whose judgments [are] not yet final at the time the statute [takes] effect." (*People v. Frahs* (2020) 9 Cal.5th 618, 624.) Respondent concedes, and we agree, that many of the above legislative changes apply retroactively to defendants whose judgments are not yet final on appeal. (See *People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207 [*Estrada* retroactivity applies to Assembly Bill No. 333's changes to the elements of a section 186.22 gang enhancement]; *People v. Chavez* (2018) 22 Cal.App.5th 663, 712 [*Estrada* retroactivity applies to Senate Bill No. 620]; *People v. Sek* (2022) 74 Cal.App.5th 657, 673 [*Estrada* retroactivity applies to Assembly Bill No. 518].)

We conclude, however, that these legislative changes do not apply retroactively to appellant because his judgment was final long before their enactment. *Estrada* only extends to "cases that are not yet final as of the legislation's effective date." (*People v.*

*Esquivel* (2021) 11 Cal.5th 671, 675.) "A judgment becomes final ' "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed." ' " (*People v. Padilla* (2022) 13 Cal.5th 152, 162 (*Padilla*).)

Here, appellant's judgment became final in 2013 after we remanded the matter to the trial court following appeal, the trial court dismissed several counts pursuant to our opinion, sentence was again imposed, and appellant did not file a subsequent appeal. Although appellant filed a petition for writ of habeas corpus in 2018, "[m]erely filing a collateral attack does not make the judgment nonfinal." (*Padilla*, *supra*, 13 Cal.5th at p. 162.)

Appellant bases his retroactivity claim on our high court's holding in *Padilla*. There, the juvenile defendant was convicted of murder in adult criminal court and sentenced to life without the possibility of parole. (*Padilla*, *supra*, 13 Cal.5th at p. 159.) Fifteen years later, he successfully petitioned for a writ of habeas corpus in light of *Miller v. Alabama* (2012) 567 U.S. 460, which held that mandatory life without parole sentences for juveniles violates the Eighth Amendment. (*Padilla*, at p. 159.) Two weeks after his sentence was vacated, the California electorate approved Proposition 57, which, among other things, requires that before a juvenile may be tried in adult court, the juvenile court must conduct a " 'transfer hearing.' " (*Padilla*, at p. 159; *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303.)

The trial court subsequently resentenced the defendant to life without the possibility of parole. (*Padilla*, *supra*, 13 Cal.5th at p. 159.) On appeal from his resentencing, *Padilla* held the defendant was entitled to the retroactive application of Proposition 57, and thus, a transfer hearing. (*Padilla*, at p. 159.) The court observed it had already decided in *People v. Superior Court (Lara)*, *supra*, 4 Cal.5th 299 that the *Estrada* presumption of retroactivity applies to the juvenile provisions of Proposition 57. (*Padilla*, at p. 160.) Thus, the issue before the court was whether his original judgment and sentence became "nonfinal when his sentence was vacated on habeas corpus." (*Id.*,

15.

at p. 158.) *Padilla* held that it did, reasoning that when the defendant's sentence was vacated, the trial court regained the jurisdiction to impose a new sentence. (*Id.* at pp. 161–162.) It explained that even though the defendant's habeas petition began as a collateral attack on a final judgment, the judgment became nonfinal when his sentence was vacated, because at that point "there was no final judgment to attack." (*Id.* at p. 163.)

We conclude *Padilla* is distinguishable from the instant case because appellant's sentence was never vacated. The hearing before the trial court was not a resentencing. The trial court did not "regai[n] the jurisdiction and duty to consider" the appropriate sentence. (*Padilla*, *supra*, 13 Cal.5th at p. 161.) Its charge was only to clarify whether it had previously exercised its discretion pursuant to section 1385 to dismiss a gang enhancement, and to consider whether it would do so now. Had the trial court elected to strike the gang enhancement, it would have triggered a full resentencing, and appellant's matter would have been in a procedural posture analogous to *Padilla*. (See *People v. Buycks*, *supra*, 5 Cal.5th 857, 893 ["[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' "].) However, because the trial court elected not to strike the enhancement, his sentence remained unchanged, and his judgment remained final.

*People v. Guillory* (2022) 82 Cal.App.5th 326 (*Guillory*) is instructive. In *Guillory*, the defendant filed a petition for resentencing under section 1172.6, contending she could not have been convicted of murder under the law as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015). (*Guillory*, *supra*, 82 Cal.App.5th at p. 332.) The trial court found the defendant made a prima facie showing and issued an order to show cause, but at the subsequent evidentiary hearing ruled she was not entitled to relief. (*Ibid.*) On appeal, the defendant contended she was entitled to the retroactive application of Proposition 57, and thus, a transfer hearing. (*Guillory*, at p. 335.) The appellate court disagreed. Comparing the procedural posture of the

defendant's matter to *Padilla*, the court reasoned: "An order to show cause under section 1172.6 does not vacate the petitioner's sentence but, like the habeas petition in *Padilla*, sets in motion proceedings to determine whether the petitioner is entitled to vacatur and resentencing. (§ 1172.6, subd. (d)(1).) The original judgment remains final until that determination is made." (*Guillory*, at pp. 335–336.)

Here, as in *Guillory*, an order to show cause was issued, which set in motion postjudgment proceedings to determine if appellant was entitled to relief. As we explained above, if granted relief, appellant would be entitled to a full resentencing which would render his judgment nonfinal. However, the trial court did not grant the requested relief and appellant's sentence was never vacated. Therefore, appellant's claim that he is entitled to the retroactive application of Assembly Bill No. 333, Senate Bill No. 620, and Assembly Bill No. 518, lacks merit, because they were all enacted after appellant's judgment became final in 2013.[3]

## DISPOSITION

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


DETJEN, J.


FRANSON, J.

---

[3]   Because we conclude that the above legislative enactments do not apply retroactively based on the finality of his judgment, we need not address appellant's remaining claims, including that: (1) due process and equal protection require the retroactive application of section 1109 to nonfinal judgments; and (2) counsel was ineffective for failing to request the trial court reduce or strike the section 12022.53, subdivision (c) firearm enhancement pursuant to Senate Bill No. 620.